The Honorable Jim Milum State Representative 607 Skyline Drive Harrison, AR 72601-2309
Dear Representative Milum:
I am writing in response to your request for an opinion concerning several of the statutes on cruelty to animals. You have asked that I provide a "simple explanation" of the following statutes for a constituent:
1. A.C.A. § 5-62-101 (a) (1), (2), and (3);
2. A.C.A. § 5-62-111 (a) and (b);
3. A.C.A. § 5-62-118 (a) and (b).
RESPONSE
I will set out the text of these provisions and will comment briefly on each. Because I have not been presented with any specific questions, however, the opinion should not be read to address any particular issue or question of interpretation.
Section 5-62-101, which establishes the offense of "cruelty to animals," provides as follows under subparagraphs (1), (2), and (3) of paragraph (a):
 (a) A person commits the offense of cruelty to animals if, except as authorized by law, he or she knowingly:
(1) Abandons any animal;
(2) Subjects any animal to cruel mistreatment;
(3) Subjects any animal in his or her custody to cruel neglect[.]
A.C.A. § 5-62-101 (Supp. 2001).
This section is part of the Arkansas Criminal Code that was adopted in 1975 (see Acts 1975, No. 280, § 2918). As stated in the Original Commentary to A.C.A. § 5-62-101, this section was "designed to simplify current authority on this subject and is largely self-explanatory." Commentaries, Vol. B. at 264 (Repl. 1995). With regard to the words "except as authorized by law," the Commentary goes on to state that this "exempt[s] those types of activities permitted by laws respecting the hunting and trapping of wild animals." Id.
There are few reported cases involving this criminal provision. Because it is penal ("cruelty to animals" is a Class A misdemeanor under §5-62-101 (b)), we know that it must be strictly construed. See generallyWilcox v. Safley, 298 Ark. 159, 766 S.W.2d 12 (1989). Additionally, guilt must be proven "beyond a reasonable doubt." Ford v. City of Hot Springs,294 Ark. 435, 743 S.W.2d 394 (1988). The case of Norton v. State,307 Ark. 336, 820 S.W.2d 272 (1991), also offers some insight, wherein the court confirmed a "cruelty to animals" conviction, finding sufficient evidence that the defendant acted "knowingly" as required under §5-62-101. The court pointed to the following definition of "knowingly" found in A.C.A. 5-2-202 (2):
 A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result[.]
Applying this definition, the court in Norton found sufficient evidence that the defendant "must have been aware that she allowed the animals to reach a deplorable condition." 307 Ark. at 339. The court recounted the following testimony:
 Prosecution witnesses testified that the goats were in such discomfort from long hooves that many were walking on their knees. Photographs introduced in evidence make this condition obvious, and the veterinarian's testimony established that walking on the knees also caused pain to the animals. His testimony also established that the rabbits found alive in cages were in discomfort. Cruel neglect is obviously displayed in the photographs of the hooves and distended udders of the goats found on the property. Photographs showed many dead rabbits.
Whether a charge of "cruelty to animals" is justified in a particular case will of course depend upon the particular facts. Norton is simply illustrative of one scenario where the court found sufficient evidence of" cruel neglect" to support a conviction.
The second provision about which you have inquired, A.C.A. § 5-62-111
(Repl. 1997), states:
 (a) Any officer, agent, or member of a society which is incorporated for the prevention of cruelty to animals may lawfully interfere to prevent the perpetration of any act of cruelty upon any animal in his presence.
 (b) Any person who shall interfere with or obstruct any such officer, agent, or member in the discharge of his duty shall be guilty of a misdemeanor.
This section is the codification of § 10 of Act 47 of 1879, and is one of several provisions in the 1879 act that confer special authority on local humane societies. See Commentary to § 5-62-101, supra, and A.C.A. §§5-62-110—116. An officer, agent, or member of such a society may, in accordance with § 5-62-111, "interfere to prevent the perpetration of any act of cruelty upon any animal in his presence." The term "cruelty" is defined in a companion statute, A.C.A. § 5-62-110, to include "every act, omission, or neglect whereby unjustifiable physical pain, suffering, or death is caused or permitted[.]" A.C.A. 5-62-110 (a) (2) (Repl. 1997). There is no definition of the term "interfere" under the statutes, or other indication of what, precisely, an officer, agent, or member of a humane society may do to "lawfully interfere" to prevent an act of cruelty.
As with A.C.A § 5-62-101, supra, case precedent on this Code section is limited. In one of the few cases citing § 5-62-111, the court refused to apply it because there was insufficient evidence that an "act of cruelty" had been perpetrated on the animal. See Elliott v. Hurst, 307 Ark. 134,817 S.W.2d 877 (1991). Elliott was an appeal of a tort action based upon the alleged conversion[1] of a dog by someone who claimed, in part, that § 5-62-111 allowed her to take possession of the dog because the owner had treated it inhumanely. 307 Ark. at 137. The facts showed that the appellant/defendant in the tort action had visited the appellee/owner in response to an advertisement offering dogs for sale, and had noticed that one of the dogs had a seriously infected leg. This eventually led to the owner taking the dog to a veterinarian, who amputated the leg and later released the dog to the appellant, who averred that she had authority to keep him. Id.
The court found no act of cruelty under these facts, and in refusing to apply § 5-62-111, stated:
 The appellant offered no evidence indicating that appellee actually inflicted an injury on Rambo, nor did the trial judge believe appellant's story that appellee was inhumane by failing to seek treatment of Rambo's infection. . . . [T]he trial court simply found appellee had perpetrated no cruelty on his animal. Thus, based on the record before us, we cannot say the trial court was clearly wrong in refusing to apply 5-62-111.
Id. at 137-138.
The appellant/defendant in the conversion action was thus unable to establish that § 5-62-111 permitted her to "interfere with [the owner's] possessory right to [the dog.]" 307 Ark. at 137.[2]
I have found no other cases discussing § 5-62-111. As noted above, the statute is silent as to what exact action may be taken to "lawfully interfere" to prevent an act of cruelty. While taking possession of the animal may well be one such action, I believe Elliott illustrates that the question of whether there has been a lawful interference pursuant to this Code section is intensely factual, and will depend upon all of the surrounding facts and circumstances.
The last Code section in question is A.C.A. § 5-62-118 (Repl. 1997), which states:
 (a) Any person who shall impound or cause to be impounded in any pound or other place any creature shall supply to it during such confinement a sufficient quantity of good wholesome food and water, and in default thereof shall upon conviction be adjudged guilty of a misdemeanor.
 (b) In case any creature shall be at any time impounded as aforesaid and continues to be without necessary food and water for more than twelve (12) successive hours, it shall be lawful for any person, from time to time and as often as it shall be necessary, to enter into and upon any pound or other place in which any such creature shall be so confined and to supply it with necessary food and water so long as it shall remain so confined. Such person shall not be liable to any action for the entry, and the reasonable cost of the food and water may be collected by him from the owner of the creature, and the creature shall not be exempt from levy and sale upon execution issued upon a judgment therefor.
My research has disclosed no cases addressing this provision. However, I believe it is fairly self-explanatory. Subsection (a) makes it a misdemeanor to impound an animal without sufficient food and water. As noted above with regard to A.C.A. § 5-62-101, this is a penal provision and as such will be strictly construed, with all doubts resolved in favor of the defendant. See generally Wilcox, supra. Subsection (b) gives a right of entry to provide food and water to impounded animals under the prescribed circumstances, and it recognizes a cause of action for the reasonable cost thereof.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] "Conversion" is "any distinct act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's right."Elliott, 307 Ark. at 138 (citation omitted).
[2] She apparently also offered no evidence or argument that she was entitled to the protection of § 5-62-111 as an officer, agent, or member of a humane organization. But the court did not reach that issue. Id. at n. 1.